## MASON v. ROUTZAHN, Collector of Internal Revenue.

(District Court, N. D. Ohio E. D. July 2, 1925.)

No. 12280.

Internal Revenue ⬧7—Dividends declared in 1916 and in January, 1917, held not subject to income tax at 1917 rates; "distribution."

Under Revenue Act 1916, § 31, added Oct. 3, 1917 (Comp. St. 1918, § 6336z), providing that any distribution to stockholders in 1917, or subsequent tax years shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute part of distributee's income for the year in which received, and shall be taxed to him at the rates prescribed for the years in which such profits or surplus were accumulated by the corporation, not only a dividend declared in October, 1916, payable in February, 1917, but one declared January 24, 1917, payable in April and July, is not to be taxed at the 1917 rate; "distribution" being made when the dividend is declared; it being permissible to declare a dividend only from accumulated undivided profits or surplus in existence and susceptible of ascertainment and of being carried into a profit and loss statement at the time of declaration; and none having accumulated in this sense for the year 1917 before January 24.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Distribution.]

At Law. Action by F. H. Mason against C. F. Routzahn, Collector of Internal Revenue. Judgment for plaintiff.

Horace Andrews, of Cleveland, Ohio and S. M. Jett, of Akron, Ohio, for plaintiff.

A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This is an action to recover back taxes paid under protest on dividends received on stock held in the B. F. Goodrich Company. Parties have waived in writing jury trial. All jurisdictional requirements have been satisfied. The evidence consists exclusively of an agreed statement of facts in writing, which is approved and adopted as my findings of fact.

Plaintiff owned and held both common and preferred stock during the years 1916 and 1917. On October 25, 1916, the corporation declared on its common stock a dividend of $1 per share, payable February 15, 1917, and on January 24, 1917, another dividend on its common stock, of $1 per share, payable May 15, 1917. On October 25, 1916, it declared a dividend of $1.75 per share on its preferred stock, payable January 2, 1917, and on January 24, 1917, it declared two dividends of $1.75 per share on its preferred stock, payable one half April 2, 1917, and the other half July 2, 1917. The dividend on the preferred stock declared October 25, 1916, and payable January 2, 1917, was not included in plaintiff's tax assessment or paid. All the other dividends were included, and the tax levied and assessed thereon at the 1917 rate. It is plaintiff's contention that the applicable rate is that obtaining in 1916, and not the rate obtaining in 1917.

The solution of this dispute turns on the proper interpretation and construction of section 31, added October 3, 1917, to the Revenue Act of 1916 (Comp. St. 1918, § 6336z). This section was considered, and a conclusion announced in Douglas v. Edwards (2 C. C. A.) 298 F. 229. When this case was argued, it was represented that the United States Supreme Court would shortly thereafter, in April last, hear arguments in that case on review, and counsel were later advised that I would hold up the decision of the instant case until an opinion was announced by that court. It has, however, now adjourned until October, without any pronouncement having been made, and, upon consideration of the interests involved,

I deem it my duty to announce my own conclusion without further delay.

If Douglas v. Edwards is correctly decided, defendant concedes plaintiff is entitled to judgment. In my opinion Douglas v. Edwards may be reversed, and plaintiff will still be entitled to judgment. In that case the dividends in question were declared, part late in September, 1917, and the remainder in December, 1917. The corporation, on declaring the dividend, announced that it was a distribution of accumulated undivided profits or surplus for the year 1916 and prior years. It appears, however, that there were ample current earnings and income accruing in the calendar year 1917, and prior to the declaration of dividends, out of which such distribution could have been made. This being so, there was presented the exact question which defendant's counsel present to me for decision in this case, but the facts in this case have a distinctly different aspect.

Here part of the dividends were declared in October, 1916, the remainder were declared as early as January 24, 1917. It is true the earliest payment was February 15, 1917, and the latest July 2, 1917. The corporation, on making these declarations of dividend, recited and announced that they were a distribution of accumulated and undivided profits and surplus accruing during the year 1916. It seems to me that this declaration is the only inference which may be legitimately drawn from the agreed facts.

The section in question is quoted in full in Douglas v. Edwards. The important language is, in substance, this: Any distribution made to the shareholders of corporations in the year 1917 shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed for the years in which such profits or surplus were accumulated by the corporation. First, it is a distribution made by a corporation. Second, the distribution is from accumulated undivided profits or surplus. Third, it shall be included in the annual income of the shareholder for the year in which received. And, fourth, it shall be taxed to the distributee, not at the rates prescribed for the year in which received by the distributee, but at the rates prescribed for the years in which such profits or surplus were accumulated. "Earnings or profits," as is pointed out in Douglas v. Edwards, appears six times in the same

act, whereas "most recently accumulated undivided profits or surplus" appears only in the connection above stated. The difference in language is so distinct as to evidence a difference in meaning.

This, however, is not the strongest consideration. Section 31 distinguishes between the year in which the shareholder receives payment of the income and the year in which the corporation shall have accumulated undivided profits or surplus. The shareholder is to include it as a part of his annual income for the year in which it is received. It is to be taxed, however, at the rate prevailing during the year in which it was accumulated. Obviously, therefore, a distinction is made, not only between earnings or profits and accumulated undivided profits or surplus, but also between distribution by the corporation and receipt of the sum distributed, by the shareholder. As applied to the facts of the instant case, this last consideration seems to be controlling.

A distribution by the corporation to the shareholders takes place when the declaration of the dividend is made, and not when the dividend is paid. The amount of the dividend, after the declaration, becomes the property of the shareholder. As between him and the corporation, the relation of debtor and creditor as to such dividend is as once created. If, after the declaration and before the payment, the shareholder dies or sells his shares, the dividends, in the absence of any board rule or by-law to the contrary, passes to the executor and not to the purchaser. It is, in substance, a debt due from the corporation, payable in the future at the date specified. These principles are well settled and have been applied to dividends declared under the Income Tax Act of October 3, 1913, making the effective date of distribution the date the dividend was declared, and not the date when it was paid. See United States v. Guinzburg (2 C. C. A.) 278 F. 363; Plant v. Walsh (D. C.) 280 F. 722. In addition thereto, it is familiar law that a corporation cannot lawfully declare a dividend except from accumulated undivided profits or surplus in existence at the time such declaration is made. It is customary, if not essential, that the existence thereof shall have been ascertained by some form of profit and loss statement. This profit and loss statement should show, carried into the surplus or undivided profits, the earnings previously made.

All of these principles must have been within the knowledge and cognizance of the lawmakers when they phrased section 31.

It is not necessary to go the length of Douglas v. Edwards in construing the language, "accumulated undivided profits or surplus," but it is essential that the undivided profits or surplus should at least have been susceptible of ascertainment, and of being carried into a profit and loss statement, if one had been made. Upon the facts agreed, no undivided profits or surplus had or could be accumulated in this sense, even if some had been earned after January 1, 1917, and prior to January 24, 1917. According to the law, and the customary principles of corporate management, the dividend declaration of January 24th must have been made on the basis of a profit and loss statement closed not later than the first of that month. If, therefore, distribution by the corporation, within the contemplation of section 31, means the declaratory distribution made by the corporation, as distinguished from the receipt of the dividend when actually paid, by the shareholder, it follows that the dividends now in controversy must be a distribution of accumulated undivided profits or surplus for 1916.

I am content to dispose of this case on this ground: I agree that the word "deemed" is to be taken in the sense of "conclusively presumed." If there are or have been accumulated undivided profits or surplus before the distribution is declared or, in other words, made, it will be conclusively presumed against the shareholder that the distribution is from those most recently accumulated; but it is essential that the existence of accumulated undivided profits or surplus should be shown. In this case the showing is to the contrary, and it is not necessary, in order to support this showing, that a finding should be made upon the question of law and fact propounded in the last paragraph of the agreed statement of facts. It may be, as is contended by defendant, that tire sales under the facts agreed were what in law is known as a sale or return, and not a bailment, or a consignment. Even so, the showing is conclusive that on January 24, 1917, when the last dividend was declared, i. e., when the last distribution was made, there could not have been in existence accumulated undivided profits for any period later than the year 1916.

Due consideration has been given to the conflicting decisions of Douglas v. Edwards (D. C.) 287 F. 919, reversed by the Second Circuit Court of Appeals, and Harder v. Irwin (D. C.) 285 F. 402. In the main, I agree with the reasoning of the Second Circuit in reversing those decisions. In my

opinion, the District Courts ignored the well-settled rule that, in statutes levying taxes, all doubts inhering therein must be resolved against the government and in favor of the taxpayer. United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211.

Judgment will be rendered for plaintiff for amount prayed in the petition.