## CLICQUOT CLUB CO. v. UNITED STATES.

(District Court, D. Massachusetts. June 3, 1926.)

### No. 2634.

**1. Internal revenue ⟨=⟩38—Where tax is measured by price at which article is sold, taxpayer may show actual sale price, notwithstanding regulations of Department (Revenue Act 1918, § 628 [Comp. St. Ann. Supp. 1919, § 6161½d]).**

Under Revenue Act 1918, § 628 (Comp. St. Ann. Supp. 1919, § 6161½d), imposing a tax on the sale of soft drinks in bottles of 10 per cent. "of the price for which so sold," a manufacturer may show that the price for which his product was sold and invoiced included the tax, in which case the actual sale price on which he is taxable is ten-elevenths of the invoice price, and this, though the regulations of the department required payment of the tax on the invoice price, unless the tax was separately shown on the invoice.

**2. Internal revenue ⟨=⟩4.**

Authority given Commissioner of Internal Revenue by a revenue act to make rules and regulations for its enforcement does not permit him by regulation or rulings to increase the measure of the tax imposed by the statute.

At Law. Action by the Clicquot Club Company against the United States. On motion by defendant to dismiss. Denied.

Stoughton Bell and Putnam, Bell, Dutch & Santry, all of Boston, Mass., for petitioner.

Harold P. Williams, U. S. Atty., by Marcus Morton, Jr., Asst. U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge. Plaintiff brings this action at law by petition to recover a certain sum which, the plaintiff says, was illegally exacted by the collectors of internal revenue in this district as beverage taxes claimed to be due under section 628 of title 6 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6161½d).

The defendant has filed a motion to dismiss in the nature of a demurrer, on the ground that the facts set out in the petition do not entitle the plaintiff to recover.

The pertinent facts, briefly stated, are these:

The plaintiff is a corporation, engaged in the business of manufacturing ginger ale and other carbonated beverages, or soft drinks, known in the trade as "Clicquot Club" beverages. The beverage was sold in "bottles or other closed containers," and the sales were subject to the tax imposed by said section 628.

The act became effective February 25, 1919. On February 27, 1919, the plaintiff sent to all of its customers a circular letter under the caption "Important Announcement." The portion of the letter relevant to this inquiry read as follows:

"We wish to call your attention to the fact that we will not advance our price on Clicquot Club beverages with the advent of the new federal war tax, but will continue to sell these beverages at $1.47½ per case.

"*This price includes the new federal war tax on soft drinks, which will be remitted by us.* * * *

"It is not our intention to have any special price offer or deal in effect during 1919, as we have had in the past, and therefore all orders should be booked at our prevailing prices. * * *"

[1] Thereafter, during the period beginning February 4, 1919, and ending December 31, 1920, the plaintiff sold a large quantity of beverage, all of which was invoiced at $1.47½ per case. It has paid a beverage tax with respect to these sales, amounting to $231,359.21, which it claims was $21,032.66 in excess of the amount legally due on them.

Section 628 of title 6 (Comp. St. Ann. Supp. 1919, § 6161½d), so far as material, is as follows:

"There shall be levied, assessed, collected, and paid in lieu of the taxes imposed by sections 313 and 315 of the Revenue Act of 1917—(a) * * * upon all unfermented grape juice, ginger ale, root beer, sarsaparilla, pop, artificial mineral waters (carbonated or not carbonated), other carbonated waters or beverages, and other soft drinks, sold by the manufacturer, producer, or importer, in bottles or other closed containers, a tax equivalent to 10 per centum of the price for which so sold."

The measure of the tax adopted in section 628 differs from that adopted in section 313 of the act of 1917 (Comp. St. 1918, § 6161½a). In the earlier act the tax was measured by the quantity of the beverage sold, viz. one cent per gallon. Those who framed the act of 1918, however, saw fit to measure the tax by the price for which the beverage is sold.

The plaintiff is now in court because it cannot agree with the representatives of the United States as to the "price for which" the beverage was "so sold." The plaintiff claims that its invoice price of $1.47½ per case included both the selling price and the tax, or, stated in other words, that its selling price was ten-elevenths of $1.47½, or a little over $1.34, per case. The government, on the other hand, has taken $1.47½ as the price for which the product was sold, and has computed, demanded, and collected a tax accordingly. The difference between the results reached by the two methods of computation is the amount involved in this suit.

If, on the pleadings, it must be held as a matter of law that the sale price was $1.47½, the motion to dismiss must be granted; but if it is still open to the plaintiff to establish that the actual selling price was less than $1.47½, or, as it claims, approximately $1.34, then the motion should be denied. That the tax is an excise laid upon the privilege of selling rather than of manufacturing beverages is clear. It attaches only when there is a transfer of title in the commodity. The burden of the tax rests upon the manufacturer, producer, or importer who sells, but, like many other taxes of like nature, this burden was capable of being shifted upon the buyer. See American Express Co. v. Maynard, 177 U. S. 404, 20 S. Ct. 695, 44 L. Ed. 823; Home Title Insurance Co. of N. Y. v. Keith (D. C.) 230 F. 905. No question of public policy is involved. Revenue was the obvious object of the tax, and the government could very well be indifferent respecting the ultimate source of the revenue.

That Congress contemplated the possibility that the burden of this tax might be shifted is apparent, when we consider the provisions of the Act of 1918, found in title 8, containing general administrative provisions. In section 1312 of this title (Comp. St. Ann. Supp. 1919, § 6371½m) the tax in whole or in part is automatically passed on to the vendee, if the sale is made to a dealer, after the tax takes effect, under a bona fide contract made prior to September 3, 1918, which does not permit the vendor to add the whole of the tax to the price to be paid under the contract. Subparagraph 3 of section 1312.

[2] The Department of Internal Revenue appears to have proceeded on the assumption that the tax might be added to the selling price, when it undertook by regulations to prescribe the methods by which this could be done.

Article 8 of Regulations 52, relating to tax on soft drinks and other beverages sold in

bottles and other closed containers under the Revenue Act of 1918, provided as follows:

"Art. 8. *Basis for Tax—Sale Price.*—The tax is on the sale by the manufacturer of the beverage. It is measured by the price for which the beverage is sold. It is on the actual sales price of the beverage sold and not on the list price where that differs from the sales price. If the sales price of a taxable beverage is increased to cover the tax, the tax is on such increased sales price, but where the tax is billed as a separate item it is not considered as an increase in the sales price. The tax is payable in respect to a sale made whether or not the purchase price is actually collected."

In January, 1921, after all the sales involved in this controversy had been consummated, a ruling was handed down interpreting article 8, and in this ruling it was announced that:

"The theory of the regulations is that the tax is on the price for which the manufacturer sells his product at the time and place where he sells it; that this price must be clearly indicated in quotations and invoices, but that, if other items, such as transportation expenses or tax, are included in the selling price without segregation, the tax must be based on the total selling price, including such other items. It is not sufficient for the purpose of current returns that the books or records of the manufacturer show the different items entering into the selling price, if the purchaser is not fully informed by quotation in advance of the sale, and by the invoice for the goods, when such invoice is made, of the different items entering into the quoted or invoiced price."

The effect of this ruling was to require the taxpayer, if he sought to pass the tax on to the buyer: (1) To advise the purchaser in advance of the sale that the tax was included; and (2) to invoice the price and the tax as separate items, or incorporate in the invoice the following statement: "Ten-elevenths of the amount charged in this invoice represents the selling price of the product, and one-eleventh the tax thereon."

In the case at bar, the plaintiff did advise its customers in advance that the price would include the tax, but in invoicing the sales it did not show the separate items, nor did it contain the formula for computation which the department subsequently announced as the proper formula. Because it failed in this respect, the government has taken the position that the price for which the beverage was sold, for the purposes of tax, was $1.47½ per

case, and has exacted a tax computed on this basis.

The plaintiff's liability for the tax is measured by the "actual sale price," as is correctly stated in article 8 of the Regulations. What was the actual selling price? The answer in this case must be that it is the invoiced price, if the tax is not included, and ten-elevenths of such price, if the tax is included. Thus it logically follows that the plaintiff's liability for the tax depends upon the question whether the price invoiced included the tax. It depends upon the existence of a fact, and not upon the manner in which that fact is evidenced. It is competent for the plaintiff, notwithstanding the regulations and rulings of the administrative officers, to establish the "actual sale price," by showing that the price for which its product was sold included the tax of 10 per cent. This can be shown by any competent evidence. If, therefore, the plaintiff can establish that the price at which it sold its beverage did include the tax, the selling price was in fact ten-elevenths of the invoice price. It cannot be that it is precluded from showing the existence of that fact by the failure of plaintiff to recite the fact in its invoices. To advance such a contention is to overemphasize the form, and give too little weight to the substance, of things. The plaintiff cannot be deprived of its right to establish the true measure of the tax by any regulation promulgated by the administrative officers of the government.

The Revenue Act of 1918 (section 1309 [Comp. St. Ann. Supp. 1919, § 6371½i]) gave to the Commissioner of Internal Revenue authority "to make all needful rules and regulations for the enforcement of the provisions of this act," but I take it this authority does not extend so far as to permit the Commissioner, by regulations or rulings, to increase the measure of the tax imposed by section 628 on manufacturers of beverage merely because the taxpayer had failed to comply with the strict letter of the regulation or ruling. The regulations must be kept within the law. Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892. The administrative officers may not by regulations enlarge or abridge the obligations imposed by the statute. To exercise such power is to legislate, and not to regulate. U. S. v. United Verde Copper Co., 196 U. S. 207, 25 S. Ct. 222, 49 L. Ed. 449; International Ry. Co. v. Davidson, 257 U. S. 506, 42 S. Ct. 179, 66 L. Ed. 341. Statutes imposing taxes are not to be extended by implication. U. S. v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed.

240, 29 A. L. R. 1547. A fortiori such statutes cannot be extended by regulation.

The allegations set forth in plaintiff's amended petition are sufficient, if proved, to warrant the court in finding that the price for which the beverage was sold, which price is the measure of the tax, was ten-elevenths of $1.47½ per case. It follows, therefore, that, if the proof came up to the allegations, the plaintiff would be entitled to the amount claimed in its petition, to wit, $21,032.66, with interest.

I am of the opinion, therefore, that the defendant's motion to dismiss should be denied; and I so rule.